Robert J. Kirkpatrick, Plaintiff-Appellee, v. United Federation of Postal Clerk's Benefit Association, Defendant-Appellant.

Gen. No. 65-56.

Fifth District.

December 23, 1965.

Craig & Craig, of Mt. Vernon (Glenn E. Moore, of counsel), for appellant.

Elmer Jenkins, of Benton, for appellee.

GOLDENHERSH, P. J.

Defendant, National Postal Transport Association, formerly United Federation of Postal Clerk's Benefit Association, appeals from the judgment of the Circuit Court of Franklin County in the amount of $4,000, entered upon a jury verdict in an action brought to recover permanent disability benefits. This court previously reversed a judgment in favor of the plaintiff, and remanded the cause for a new trial. Kirkpatrick v. United Federation of Postal Clerk's Benefit Ass'n, 52 Ill App2d 457, 202 NE2d 136.

Defendant is a fraternal beneficiary association whose membership is limited to regular and substitute employees of the United States Postal Transportation Service. On April 18, 1951, plaintiff, then employed as a substitute railway postal clerk, applied for membership in defendant's "Beneficiary Department," and on May 5, 1951, defendant issued to plaintiff its Beneficiary Department Certificate. The Certificate provided for the payment of weekly benefits in the event plaintiff suffered bodily injuries which wholly and continuously disabled him from following the occupation of a Postal Transportation Clerk in the Postal Transportation Service of the United States, as follows:

1. A sum of $24.50 per week for the first seven weeks, and $31.50 per week thereafter for such

14

period as he may not be able to perform service as a Postal Transportation Clerk, or follow any other employment, but not exceeding fifty-two weeks from day of injury resulting through causes as aforesaid. The same to be paid as provided by the laws of this Association after the required proofs have been filed with the Secretary.

. . . . . .

3. If said member during the continuance of this Certificate shall sustain through causes as aforesaid injuries that shall permanently disable and wholly incapacitate him from performing any labor, or following any occupation, he shall receive for such injury the sum of $24.50 per week, payable in monthly payments until the death of said member, or until the full amount of Certificate shall be paid; provided, however, that proof of permanent disability must be made in accordance with the provisions of the Constitution and Laws of this Association.

The Certificate provided that the Constitution and By Laws of the Association, the Certificate, and other enumerated documents, comprise the agreement between the parties.

Article XVIII, of defendant's Constitution provides:

Section 1(c). "Any member of the benefit Association receiving injuries by accidental means alone, from violent external means, not the result of his own vicious or intemperate conduct, upon filing proper proof of disability on the official blanks of the Association, shall receive from the Benefit Fund of this Association a weekly benefit of Twenty-Four Dollars and Fifty Cents ($24.50) per week, for the first seven (7) weeks and Thirty-One Dollars and Fifty Cents ($31.50) per week

15

thereafter, beginning on the day disability first arises, for such period as he may not be able to perform service as a postal employee or follow any other employment, but not exceeding fifty-two weeks from date of injury. In case of prolonged disability, partial payment of such benefits shall be allowed. Any member who has a recurrence of an injury within fifty-two weeks after original benefits have ceased, shall be entitled to continuing benefits under the original injury for such period as he may not be able to perform service, but not exceeding a total of fifty-two weeks."

In 1958 the following provision was added:

Section 1(d). "Benefits for injury to the back cannot exceed ninety days; except that benefits for herniated or ruptured discs may be compensated up to one hundred eighty days, and except that cases of traumatic fracture, parted or severed spinal cords shall not be subject to these limitations."

Section 2. "Any member of the Benefit Association who, during his membership, shall sustain by accidental means alone, as provided in Section 1 of this Article, such injuries as shall permanently disable and wholly incapacitate him from performing service as a postal employee or following any other employment, shall be entitled to and receive for such injury, the sum of Thirty-One Dollars and Fifty Cents ($31.50) per week, payable in monthly payments, until the death of said member or until the full amount of the certificate shall be paid, and when said amount has been tendered in full, the certificate of membership held by the member must be surrendered to the Association."

Section 2(b). "No Claim for total or permanent disability benefits shall be allowed unless based upon a report of a disinterested physician or physicians selected by the Benefit Association nor unless the member has completed proof of claim under Section 1, Article XVIII, of the Constitution and has drawn at least forty-two weeks' benefits under said Section. All claims for permanent disability, under this Section of the Constitution, shall be filed with the National Secretary through the President of the Branch or Local to which the member belongs. The Branch or Local President shall send the claim to the National Secretary. Such claims must be filed on the official blanks of the Association. Said application may be filed with the Branch or Local President any time after the expiration of the aforementioned forty-two weeks benefit, but not later than ninety days from the termination of the fifty-two weeks period from date injuries were sustained which caused the disability."

Section 4. "After the claim for disability or death has been completed and filed with the Secretary of the Association, it shall then be passed upon by a Committee on Claims. Upon the approval of a weekly benefit claim by the Secretary or the Committee on Claims an order shall be drawn on the Secretary to pay said claim, and the order shall be signed by the President and the amount remitted to the certificate holder."

Section 8. "No subordinate body of this Association, nor any officer or member thereof, shall have the power or right to waive or modify, any provisions of this constitution or of the contract, and no custom or course of dealing upon the part of such body or person shall have the effect of waiving or modifying

17

any such provision of the Constitution or of the contract."

Defendant contends that as a matter of law, plaintiff did not make application for permanent disability benefits within the time required by the agreement between him and the defendant, that the conditions required under the agreement for the payment of permanent disability payments were not met, that plaintiff failed to prove he was totally and permanently disabled within the meaning of the agreement, and the trial judge should have directed a verdict for defendant.

On June 17, 1955, at about 11:15 p. m., Plaintiff was working in a mail car located in the Illinois Central yards in Chicago. In a switching operation the mail car was "rammed" and plaintiff was thrown off balance, striking his back against a steel rack. Although stunned momentarily, he thought he was uninjured and continued with his work of sorting mail. Plaintiff's regularly scheduled assignment for that night was to ride the mail car from Chicago to Carbondale. About an hour after the mishap, he felt a stinging pain in his back, and from that time until his arrival at Carbondale some 10 or 11 hours later, he experienced difficulty with, and pain in, his back. Upon arriving at Carbondale on June 18th, a Saturday, he went to bed, and on Monday saw Dr. Clarence Kelly at DuQuoin. He was treated by Dr. Kelly, and for some period of time was in the hospital. On September 22, 1955, using forms supplied by defendant, he filed an application for benefits, stating that he was unable to work for a period of 36 days, commencing on July 18, 1955, and terminating on August 22, 1955. A medical certificate filed with the application shows Dr. Kelly had diagnosed plaintiff's difficulty as a "slipped disc." Defendant's committee on claims, consisting of three of its national officers, approved plaintiff's application and he was paid benefits for 5 weeks, at $24.50 per week.

18

On March 7, 1959, plaintiff filed an application for benefits claiming disability from January 22, 1959, through February 20, 1959. The application states he was disabled because of injuries sustained on June 17, 1955, which recurred on January 16, 1959. He describes the recurrence as being "brought on by taking in mail and turning in a quick twist." The application for benefit includes the certificate of Dr. Kelly, describing the treatment rendered plaintiff, and stating that he had made a diagnosis of "ruptured intervertebral disc due to accident at work 1955." The application was approved by defendant's claims committee and plaintiff was paid benefits for 4 weeks and 2 days, totaling $105.00.

On April 29, 1959, plaintiff filed an application for benefits stating he was disabled between the dates of February 21, 1959, and April 28, 1959. He attributed his disability to an injury on June 17, 1955, with "recurrence as of January 16, 1959." The claims committee approved the application and he was paid benefits for 9 weeks and 4 days.

On July 26, 1959, plaintiff filed another application for benefits, describing the occurrence on June 17, 1955, and claiming disability benefits for the period between June 11, 1959, and July 23, 1959. The claim was approved and plaintiff was paid benefits for 43 days. The application bears the notation "Total of 140 days on recurrence only 40 more days under const.".

On October 30, 1960, plaintiff filed an application for benefits, describing the occurrence of June 17, 1955, and claiming benefits for the period commencing on April 8, 1960, and terminating on October 25, 1960, a total of 201 days. A hospital statement attached to the application shows plaintiff's admission for treatment of "old back injury sustained 6/17/55." It reflects a diagnosis of herniated nucleus pulposis left, L-5, -S-1, and a hemilaminectomy L-5, and removal of protruded disc, performed on May 19, 1960. The claims committee approved

the claim for a period of 40 days and rejected the claim insofar as it exceeded the 40 day period.

On October 12, 1961, plaintiff filed an application for benefit claiming total disability on and after August 6, 1961. The medical certificate attached to the form shows plaintiff to be totally disabled. The claims committee rejected the claim, and in a space on its form headed "remarks," noted "180 days has been paid."

■ We are not here confronted with the task of construing the provisions of article XVIII, section 1(c) of defendant's Constitution, since defendant itself has interpreted it. Defendant, by payment of plaintiff's claims of March 7, 1959, April 29, 1959, and July 26, 1959, construed this portion of its constitution to provide benefits for the recurrent periods of disability resulting from the injury suffered on June 17, 1955. It erred, however, in limiting the benefits payable to a total of 180 days' disability. Plaintiff's claim is predicated upon the injury of June 17, 1955, and the revision of defendant's Constitution in 1958, cannot affect his rights.

Section 2(b) of article XVIII (supra) provides that no claim for total or permanent disability benefits shall be allowed unless, inter alia, the claimant has drawn at least forty-two weeks' benefits under section 1 (supra). It further provides that the application may be filed any time after the expiration of the aforementioned forty-two weeks' benefit, but "not later than ninety days from the termination of the fifty-two weeks period from date injuries were sustained which caused the disability."

■■ Ambiguous provisions or equivocal expressions seeking to limit an insurer's liability will be construed most strongly against the insurer and liberally in favor of the insured. Mosby v. Mutual Life Ins. Co. of New York, 405 Ill 599, 607, 92 NE2d 103. Defendant has interpreted section 1(c) as providing for fifty-two weeks' benefits for periods of disability which need not be continuous, nor under defendant's interpretation, must

20

they have occurred within fifty-two weeks of the date on which the claimant's injury was suffered. By its erroneous application of the 180 days of benefits limitation, defendant, by its own act, has made it impossible for plaintiff to have drawn 42 weeks' benefits. There has been no "expiration of the forty-two weeks' benefit" and the application for permanent disability benefits was timely filed with defendant.

We now consider defendant's contention that plaintiff has failed to prove he is totally and permanently disabled as required by the terms and provisions of the Benefit Certificate and defendant's Constitution and By Laws. Section 2 (supra) provides for the payment of permanent disability benefits when a member has sustained "such injuries as shall permanently disable and wholly incapacitate him from performing service as a postal employee or following any other employment."

Plaintiff testified that mail handlers employed by the railroad company brought the mail to the mail car door, that it was his duty to "work" the mail, which meant sorting it, and getting it ready to dispatch at the various stations en route. He handled bags of mail which ranged in weight from 80 to 125 pounds. In the normal course of a trip, he handled between 125 and 175 bags, but some of them were handled several times. He worked his regularly assigned runs, except for the periods of disability upon which his claims for disability benefits were based. He was treated by physicians at DuQuoin, and was hospitalized both in DuQuoin and in the U. S. Government Public Health Hospital in Chicago. He underwent surgery in the Chicago hospital in May, 1960, and was hospitalized there for four weeks following the surgery. Upon release from the hospital, he was confined to his bed at home for a short time, and was confined to his home for several weeks. He returned to work in the latter part of October, 1960, and thereafter worked for several short periods of time until August,

21

1961. He has not worked or earned any money since August, 1961.

Since January, 1962, plaintiff has been attending classes at Southern Illinois University at Carbondale. At the time of trial he was carrying 14 hours of work, attending classes five days a week. He travels a round trip of 70 miles between his home and the University. He is able to drive a car, and has driven to and from school, but usually rides with someone else. He does not lift or carry anything heavy, and does not participate in any sports.

Dr. Talvaldis Kisle, a physician, called by plaintiff, testified that plaintiff was transferred into his care from the Department of Labor, Bureau of Employees Compensation, in Chicago. He had treated plaintiff, and known of his back injury, since 1958. He described the surgical scar on plaintiff's back. In response to a question propounded by plaintiff's counsel, he stated that based upon the treatments administered to, and examinations of, plaintiff since 1962, based upon his knowledge of plaintiff's condition and upon a reasonable degree of medical certainty, he was of the opinion that plaintiff was permanently and totally disabled. On Cross-examination, he stated he had not seen plaintiff since October 29, 1964, approximately four months before the trial.

Defendant contends the evidence shows plaintiff is not incapacitated from performing any labor, or following any occupation, that he is, in fact, "employed" as a student, and is not totally and permanently disabled within the meaning of the agreement.

▮ This court has examined the numerous cases cited by counsel, the annotation found at 24 ALR 203 and the annotations supplementing it, the material found in Vol 29A Am Jur 622, 45 CJS 976, and the excellent article in 64 Ill Law Forum 382. We shall not attempt

to discuss or reconcile the many conflicting decisions. In our opinion the weight of authority requires us to construe the agreement here involved to mean that plaintiff was totally and permanently disabled within the meaning of the agreement if he was unable to perform the duties of his regular occupation or any similar employment.

The issue of his disability has been submitted to two juries, both of which found for plaintiff. The evidence supports the verdict, and the judgment is affirmed.

Judgment affirmed.

EBERSPACHER and MORAN, JJ., concur.